THE GRAY EAGLE.

1. A neglect by one vessel, on approaching another in the night, to show proper signal lights, or her showing a wrong one, does not absolve such other vessel, under the act of Congress of April 29th, 1864, prescribing the lights which sailing vessels shall carry, from obligation to observe the usual laws of navigation, or such reasonable and practicable precautions generally as the circumstances allow.
2. A loss equally divided between two vessels, on facts, set forth in the case, showing fault in both.

APPEAL from the Circuit Court for the District of Wisconsin.

The owners of the schooner Perseverance filed a libel in the District Court of Wisconsin against the schooner Gray Eagle, for a collision in which their vessel had been sunk. The collision occurred in the Straits of Mackinaw, soon after midnight of the 23d of November, 1864, the night not having been a dark one; not so dark at least as that the sails of vessels could not be seen for near a quarter of a mile. The Perseverance had lost her lights in a storm, and was sailing

---

* 7 Wallace, 572.

with a white light, contrary to the rules prescribed by the act of Congress, "fixing certain rules and regulations for preventing collisions on the water," approved April 29th, 1864, and which made it her duty to carry a green light on her starboard side, and a red one on her larboard, " and no others" anywhere. She was sailing down the strait on a course E. by S., with the wind south, and discovered the lights of the Gray Eagle about a mile ahead, coming up the strait, on a course of about W. N. W.* The witnesses differed a little as to these points, but this was according to the weight of the testimony. The libel alleged, and the evidence of all the libellant's witnesses corresponded with its statements, that when the Gray Eagle was first seen, or soon afterwards, she showed a red light; but that this soon disappeared; after which she showed a green light until near the moment of the collision, when she again showed her red light. The libellants asserted that they had a right to suppose that the Gray Eagle would pass on the starboard of the Perseverance; but that shortly before the disaster she kept away, and, although the master of the latter called on her to luff several times, in a loud voice, and at the same time ordered his own man at the wheel to put the wheel˝hard a-starboard, the Gray Eagle made no reply, but kept on her course, and in less than two minutes struck the Perseverance stem on, abreast the starboard quarter, with such force as to sink her in about two minutes, the master and crew with difficulty saving their lives.

The defence set up by the answer for the Gray Eagle was, chiefly,

1st. That the other vessel was sailing without the regulation lights and in violation of the act of Congress.

2d. That at a certain place in the bay mentioned "a white light was seen about a mile distant, bearing about a point on the Gray Eagle's port bow, which was supposed to be a light on shore, or upon a vessel at anchor; that the Gray Eagle was then kept away about a point and steadied on her

---

* A diagram on page 509 may, perhaps, assist the non-nautical reader in understanding the statement.—REP.

course to give berth to the light; that *the light was not discovered to be a vessel's light in motion by the commanding officer until the Perseverance got within about three lengths of the Gray Eagle,* the said light being then nearly ahead and to windward; that the light was then supposed to be the binnacle light of a vessel that had hauled up all she could to pass the .Gray Eagle to windward; that the mate, not seeing any other light, ordered the helm hard a-port, so as to pass on the port side and keep off and clear the stern of the vessel, and stepped to windward of his vessel, and then heard for the first time a cry from the other vessel to port the helm hard down, but that it was too late, and that the vessels were right together."

It seemed from the evidence that the light on the Perseverance was not reported to the mate in charge of the Gray Eagle till near the moment of collision. The mate testified that as soon as he saw it he ordered the "wheel up;" a wrong order. The men who had been watching the light cried out, "hard down;" a right order, but not the one obeyed.

The District Court dismissed the libel, principally on the ground that the Perseverance, having lost her lights, ought to have lain by at anchor in the night time, and was expressly prohibited from sailing with a white light. The Circuit Court reversed this decision, and decreed that both vessels were in fault, and that the damages should be divided between them. From this decree the owners of the Gray Eagle appealed.

*Messrs. Emmons and Vandyke, for the appellants:*

Conceding that the Perseverance lost her regulation lights by a *vis major*, there was no compulsory necessity for her to have been under way in the night, in a narrow strait. She ought to, and could have lain at anchor. If she must, or chose to run, she should have hooded her light, and kept out of the way of all other vessels.

She was guilty of premeditated wrongdoing, of violating positive law, in carrying a light which she had no right to carry, and in not carrying those which, if she insisted on

sailing at night, she was bound to have. This was the primal and proximate cause of the disaster. She criminally kept her way and course, displaying a lying signal, and when a collision has happened—as collision could hardly else than happen—she, then—contemptuously putting aside, as of no importance, what it was that her white light indicated and declared to the other vessel,—demands damages from that other vessel; a vessel itself in the observance of every requirement and which she has recklessly misled. This cannot be done.* A party himself in fault cannot recover from any one.

No fault is shown on the part of the Gray Eagle. The vessels were running on nearly parallel courses. The light thus approaching in so nearly a direct line, there was nothing to indicate that it was in motion, and the Gray Eagle supposing it to be a light on shore, or a vessel at anchor, kept away about a point, and steadied on her course. It was not discovered to be the light of a vessel in motion, until they were close aboard one another. The *fact* that this discovery was not made is indisputable. The Gray Eagle cannot be held responsible for what may afterwards prove to have been an error or mistake in orders given in a moment of peril and danger, and when the collision had become inevitable or imminent, nor for mistakes originating in or proceeding from the fault of the other vessel.

*Messrs. Willey and Carey, contra:*

The fact that the Perseverance, owing to the misfortune of having lost her regulation lights, had a light prohibited to vessels while sailing, did not of itself absolve the Gray Eagle from the observance of that degree of caution, care, and nautical skill, which the exigencies of the case required. If a white light *usually* represented a vessel at anchor, the officers and seamen of the Gray Eagle had no right to conclude that it *always* did. It was their duty, from the moment the light was seen, to have watched it carefully, in order to ascertain from its bearings, whether the vessel was in motion

---

* Waring *v.* Clarke, 5 Howard, 465.

or at anchor. And if, in the exercise of ordinary nautical skill and care, this could have been done, and was omitted, and this omission contributed to the accident, then the Gray Eagle must share the burdens of the loss, although the Perseverance was in fault in running with a prohibited light.

Now the courses of the vessels at first were obviously converging courses. The Perseverance held her course of E. by S., closehauled, *until the very instant of collision*, as was her duty.

The Gray Eagle on discovering our light, a mile distant, made it about a point over her larboard bow. She then ported about a point, to go to the right, or to the starboard of our light. Her course was thus made N. W. by W., one point higher up than her first course of W. N. W. Now if the light had been stationary, after the Gray Eagle had laid her course so as to avoid it, it would have continued to bear over the larboard bow of the Gray Eagle, *increasing* in its bearings as the light was approached; and this they must

have known would be the fact. But as our vessel advanced, the Gray Eagle would have to be constantly changing her course to hold our light on her larboard. In point of fact, as the result showed and as must necessarily have been the fact, our light must have got over on their *starboard* bow, by the advance of our vessel, and constantly increased in its bearings off the starboard bow of the Gray Eagle, as our vessel advanced, which they must have known could not be if the light was stationary. All this, with the least watching of the light after the first observation had been made, would have admonished the Gray Eagle that our light was *moving*, and that as she (the Gray Eagle) had the wind free and on the larboard side, it was her duty to avoid our vessel, which had the wind on her starboard side. And she would have discovered this in ample time to have done so, if she had given any attention to the movements of our light.

Mr. Justice BRADLEY delivered the opinion of the court.

The appellants in this court, as in the courts below, strongly relied on the point, that the Perseverance was sailing with a white light at night, contrary to the express prohibition of the statutory regulations in that behalf, and, therefore, that the common law rule, which prohibits a recovery by a party who was himself in fault, and who contributed to the damage sustained, ought to be applied to her. But this court has frequently held that the omission to exhibit the proper light, though a fault which undoubtedly puts a vessel *primâ facie* in the wrong, does not exempt other vessels from the consequences of negligence on their part. It was so decided in the case of *Chamberlain* v. *Ward*.* That case arose under the act of March 2d, 1849, it is true; but that act seems quite as stringent in its provisions as the act of 1864, and the court, in reference to this question, says: "Failure to comply with the regulation, in case a collision ensues, is declared to be a fault, and the offending party is made responsible for all losses or damage resulting from the neglect; but it is not declared by that section, or by any other rule

---

* 21 Howard, 548, 567.

of admiralty law in the jurisprudence of the United States, that the neglect to show signal lights, on the part of one vessel, discharges the other, as they approach, from the obligation to adopt all reasonable and practicable precautions to prevent a collision. Absence of signal lights in cases falling within the acts of Congress renders the vessel liable to the extent already mentioned, but it does not confer any right upon the other vessel to disregard or violate the laws of navigation, or to neglect any reasonable and practicable precaution to avoid a collision which the circumstances afford the means and opportunity to adopt." We are of opinion that the same construction must be given to the act of 1864, and that the exhibition of a prohibited light, as well as the omission to exhibit the proper lights, is insufficient to relieve another vessel from the duty of observing the laws of navigation and of using all practicable precautions to avoid a collision. It is a fundamental rule of admiralty law that where both parties are in fault, both must contribute to make good the damage, and this rule will not be deemed to be abrogated without an express declaration of Congress to that effect.

Supposing, then, the Perseverance to have been in fault for not supplying herself with red and green lights, and for exhibiting a white light, or for not casting anchor and lying by till morning, or for any other reason (which, as her owner or master has not appealed, it is to be presumed she was),* the only remaining question for us to consider is, whether the Gray Eagle was also in fault, so as to be chargeable with contributing to the collision. This question, we think, has been properly answered by the Circuit Court. It is admitted by the answer of the appellants that the light of the Perseverance was seen when about a mile distant, bearing about one point on the Gray Eagle's port bow, and was supposed to be a light on shore, or upon a vessel at anchor; and that the Gray Eagle was kept away about a point and steadied in her course to give berth to the light; and that it was not dis-

---

* See Chittenden v. Brewster, 2 Wallace, 196; McDonough v. Dannevy 8 Dallas, 198.

covered to be a vessel's light in motion, by the commanding officer, until the Perseverance was within about three lengths of her. This is a very remarkable admission. The courses of the two vessels, after this light was seen, must have been at an angle of about two points of the compass with each other, and it is demonstrable from all the evidence taken together that the Perseverance must have passed from the Gray Eagle's port bow to her starboard bow before the collision took place, and yet it is said that the commanding officer did not discover that the light was in motion until within three lengths of her. The appellees' witnesses all testify that the red light of the Gray Eagle was first seen, and then disappeared, after which her green light only was seen until just before the collision. This shows that the Perseverance had crossed the Gray Eagle's course, and that her motion must have been seen had a proper lookout been kept on the latter. It also shows that the Perseverance properly kept on her course; and had the Gray Eagle kept on hers the collision would not have occurred. The night was not dark; the sails of the vessels could be seen nearly or quite a quarter of a mile. It seems to us evident that there must have been great negligence on the part of those having charge of the Gray Eagle. From the evidence of the appellants' witnesses it appears that there was much confusion on board of her just as the collision was about to take place. One of the men on the lookout forward says: " When I sung out to put the wheel down, the mate sung out to put the wheel up." The man at the wheel testified to the same thing, and says that he obeyed the mate's orders, and that undoubtedly caused the collision. Had the mate been on the lookout, as an officer in command, with a light ahead, ought to have been, the difficulty would not have occurred. We are, therefore, of opinion that the men in charge of the Gray Eagle were delinquent in their duty under the circumstances of the case, and that this delinquency contributed to cause the collision in question, and, as a consequence, that the loss should be divided between the parties.

DECREE AFFIRMED.